FEDERAL DEPOSIT INSURANCE CORPORATION v BERGAN

Docket No. 152040. Submitted December 6, 1994, at Grand Rapids. Decided May 19, 1995, at 9:35 A.M.

    Kathlyn and Richard Elliot brought an action in the 54A District Court against the Federal Deposit Insurance Corporation (FDIC) and Eric Bergan, seeking forfeiture of a land contract. The Elliots had sold a property to Glenn and Roberta McKennon in May 1979, who, in turn, had transferred their vendees' interest in June 1982 to the United States Mutual Real Estate Investment Trust (USM REIT). The USM REIT immediately thereafter sold its interest in the property to Eric Bergan by means of a seven-year land contract bearing an interest rate of 11.5 percent a year. In November 1982, Bergan informed the USM REIT that the interest rate of the land contract was usurious under Michigan law and that, accordingly, all past and future payments, except tax escrows, should be applied to the principal balance of the land contract. Through a series of transfers and assignments of assets, including those associated with the insolvency proceedings of two separate savings institutions, the FDIC acquired the vendees' interest in the Elliot land contract and the vendor's interest in the Bergan land contract. In March 1990, Bergan tendered what he purported to be his final payment under his land contract, claiming discharge of the land contract on the basis that the total of his payments equaled the principal amount due under the contract. The FDIC, as a result, stopped payments to the Elliots under the Elliot land contract, precipitating the Elliots' forfeiture action. The FDIC filed a cross-claim against Bergan for forfeiture of the Bergan land contract. The FDIC and the Elliots settled, and the Elliots' action was dismissed. Bergan raised the defense of usury, claiming that he had made full payment of the purchase price, that he was not obligated to make usurious interest payments, and that, accordingly, he was entitled to the FDIC's interest in the land contract. The district court, Beverly Nettles-Nickerson, J., found that the FDIC was not subject to the provision of the

REFERENCES

Am Jur 2d, Banks § 835.

See ALR Index under Federal Deposit Insurance Corporation.

state usury law that excuses the payment of usurious interest, MCL 438.32; MSA 19.15(2), and held that, accordingly, Bergan was liable for back interest. Bergan appealed, and the Ingham Circuit Court, Lawrence M. Glazer, J., reversed, holding as a matter of law that the FDIC was subject to the interest forfeiture provision of the usury statute. The FDIC appealed by leave granted.

The Court of Appeals *held:*

1. The reliance of the FDIC on the provisions of 12 USC 1825(b)(3) is misplaced, because that statute clearly is applicable only to a penalty arising out of the failure to pay taxes and was not intended to apply to a penalty imposed as a result of a usurious contract.

2. The FDIC, whether acting in its receivership capacity or in its corporate capacity, is not subject, as a matter of federal sovereign immunity and federal common law, to any state-imposed penalty. Because there is no question that the interest forfeiture provision of MCL 438.32; MSA 19.15(2) is generally penal in nature, the FDIC is immune from bearing the brunt of that penalty.

3. Because the interest forfeiture provision of the usury statute acted as a penalty against the FDIC only for that period after the FDIC had become a receiver of the assets of the savings institution that had held the land contract, remand to the district court is necessary for calculation of the interest due under the land contract after the date of the federal receivership. If Bergan pays the past due interest so calculated plus any applicable judgment and prejudgment interest within ninety days of the order fixing the interest due, the district court must enter an order awarding Bergan ownership of the FDIC's interest in the Elliot land contract. If Bergan does not pay the back interest on time, the court must enforce the forfeiture provision of the Bergan land contract.

Affirmed in part, reversed in part, and remanded.

INTEREST — USURY — FEDERAL DEPOSIT INSURANCE CORPORATION.

The Federal Deposit Insurance Corporation, as a matter of federal sovereign immunity and federal common law, is not subject to any state-imposed penalty; because there is no question that the interest forfeiture provision of Michigan's usury statute is penal in nature, the Federal Deposit Insurance Corporation is not subject to that penalty for any period occurring after it has become a receiver of the assets of an insolvent savings institution that had held a land contract bearing a usurious rate of interest (MCL 438.32; MSA 19.15[2]).

*Ann S. DuRoss, Colleen B. Bombardier, Robert D. McGillicuddy,* and *Gregory E. Gore* and *Law, Weathers & Richardson, P.C.* (by *Ingrid A. Jensen*), for the plaintiff and counterdefendant.

*Dood & Wilson* (by *John J. Dood*), for the defendant and counterplaintiff.

Before: MICHAEL J. KELLY, P.J., and CONNOR and J. M. GRAVES, JR.,* JJ.

MICHAEL J. KELLY, P.J. Plaintiff appeals by leave granted an order of the circuit court reversing the district court's judgment of a land contract forfeiture in favor of the Federal Deposit Insurance Corporation (FDIC). The circuit court held as a matter of law that the FDIC is subject to the interest forfeiture provision of the Michigan usury statute, MCL 438.32; MSA 19.15(2), and that the FDIC therefore was not entitled to collect back interest on defendant's land contract. We affirm in part, reverse in part, and remand.

The facts of this case are not in dispute. In 1982, defendant, Eric Bergan, entered into a land contract with the United States Mutual Real Estate Investment Trust (USM REIT) for the purchase of a vendee's interest that the USM REIT held under another land contract for the purchase of residential rental property. Defendant's land contract called for an interest rate of 11.5 percent, a rate that was usurious under Michigan law. MCL 438.31c(6); MSA 19.15(1c)(6). If a lender charges a usurious rate of interest, the borrower is not required to make any interest payments on the loan; all interest payments are credited toward the principal balance. MCL 438.31c(7), 438.32; MSA 19.15(1c)(7), 19.15(2). Accordingly, defendant in-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

formed the USM REIT in November 1982 that all past and future payments, excluding tax escrows, would be applied directly toward the principal balance of the land contract. Between 1982 and 1990, defendant paid $74,400 toward the contract, which equaled the principal balance of the loan.[1]

The USM REIT was dissolved in 1983, and its assets were transferred to the United States Mutual Financial Corporation, a savings and loan holding company. Through a series of assignments, the USM REIT's interest in defendant's land contract became an asset of the United States Mutual Savings Bank (USM SB). In 1985, the USM SB was declared insolvent, and the Federal Savings and Loan Insurance Corporation (FSLIC) was appointed receiver. The FSLIC arranged a purchase and assumption transaction with the United States Mutual Savings and Loan Association, which changed its name to Regency Savings Bank in 1986. In 1989, Regency was declared insolvent, and the FSLIC was appointed receiver. At that time, approximately $6,000 was due on the principal balance of defendant's land contract. Subsequently, the FSLIC was abolished under § 401(a) of the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub L 101-73, tit IV, § 401, 103 Stat 356-357. Many of its duties, including serving as receiver for failed banks such as Regency, were transferred to the FDIC.

In March 1990, defendant tendered his final land contract payment to the FDIC. That same

---

[1] The FDIC's argument that the usury statute should not apply at all to the land contract here is not an issue properly before this Court. The FDIC conceded below that "[i]f Regency . . . had not failed, and was still the institution, the usury would probably be a good argument." Further, the statement of questions in the FDIC's brief on appeal fails to identify the applicability of the usury statute on its own terms as an issue. The legality of the land contract, under which heading the usury issue appears in the FDIC's brief, is immaterial to the disposition of this case.

month, the FDIC stopped payments to the vendors in the underlying land contract. The vendors in that contract subsequently brought suit against the FDIC for forfeiture of the contract. Defendant was also named as a party in that action because of his derivative interest. The FDIC subsequently filed a cross-claim against defendant for forfeiture of his land contract interest. After the FDIC and the vendors in the underlying contract agreed to the unpaid balance due on that contract and dismissed that action, defendant moved for summary disposition of the remaining claim against him. Defendant raised the defense of usury, claiming that he had paid the full purchase price of the land contract and that he was not obligated to make any usurious interest payments before he became entitled to the FDIC's interest in the underlying contract. In August 1991, the district court found that the FDIC was not subject to the state usury laws and found defendant liable for $71,563.52 in back interest. Defendant was given ninety days to cure his default or face forfeiture of his interest. The circuit court reversed in April 1992. This Court granted the FDIC's application for leave to appeal in November 1992.

This appeal is limited to the issues raised in the application for leave to appeal.[2] The FDIC argues

---

[2] For this reason, we decline to address the applicability of the usury defense under the federal holder-in-due-course doctrine. See, e.g., *Federal Deposit Ins Corp v Wood*, 758 F2d 156, 160-161 (CA 6, 1985). The application for leave to appeal referred only to the FDIC's status as a holder-in-due-course under Michigan law. Further, the FDIC expressly represented to the circuit court that it was not relying on holder-in-due-course principles, and its brief on appeal fails to identify the holder-in-due-course issue in the statement of questions. The issue is not material to the legality of the land contract, under which heading the FDIC addresses holder-in-due-course principles. Our holding in this case is limited to the application of the usury statute as a penalty; it does not concern the application of the usury statute as a personal defense to payment of a negotiable instrument. In any event, the rationale behind the penalty and holder-in-due-course

that it is entitled to back interest under the land contract despite the forfeiture provision of the state usury statute, because that provision imposes a penalty to which the FDIC should not be subject by virtue of 12 USC 1825(b)(3), sovereign immunity principles, and federal common law. The FDIC supports its position with the policy argument that once a bank goes into receivership there is no longer any reason to enforce the forfeiture provision of the usury statute, because enforcement of that provision can no longer serve as a deterrent and would only diminish the value of assets otherwise available to creditors of the failed bank.

12 USC 1825(b) provides in pertinent part:

> When acting as a receiver, the following provisions shall apply with respect to the [FDIC]:
>
> * * *
>
> (3) The [FDIC] shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate or recording tax or any recording or filing fees when due.

The FDIC argues that forfeiture of interest due on defendant's land contract constitutes a penalty from which the FDIC should be immune under § 1825(b)(3). However, that section addresses the FDIC's status only with respect to taxation, providing that "immunity from 'penalties' attaches solely in the context of taxation." *Morris v Resolution Trust Corp,* 622 A2d 708 (Me, 1993). But see *Federal Deposit Ins Corp v Southwest Motor Coach Corp,* 780 F Supp 421, 423 (ND Tex, 1991). Section 1825(b)(3) does not apply to penalties for usury.

theories is essentially the same. Compare *Wood and Federal Deposit Ins Corp v Claycomb,* 945 F2d 853, 861 (CA 5, 1991).

Alternatively, the FDIC argues that it is not subject to state usury penalties as a matter of sovereign immunity and federal common law. Under the doctrine of sovereign immunity, the United States and its agencies are immune from suit except to the extent that such immunity has been waived. *Loeffler v Frank,* 486 US 549, 554; 108 S Ct 1965; 100 L Ed 2d 549 (1988). This immunity extends to the imposition of penalties. *Missouri Pacific R Co v Ault,* 256 US 554; 41 S Ct 593; 65 L Ed 1087 (1921). The sovereign immunity argument is closely related to the FDIC's argument under § 1825(b)(3). In fact, § 1825(b)(3) has been viewed as simply a reaffirmation by Congress that it does not intend to waive the FDIC's immunity from penalties. *Southwest Motor Coach, supra* at 423.

The immunity of the FDIC is reinforced by federal common law. In *Federal Deposit Ins Corp v Garbutt,* 142 Mich App 462, 473; 370 NW2d 387 (1985), this Court relied on federal common law to hold that the FDIC is not subject to the defense of usury. The rationale for this holding has been explained in federal cases. In *Federal Deposit Ins Corp v Tito Castro Construction, Inc,* 548 F Supp 1224, 1226 (D PR, 1982), aff'd 741 F2d 475 (CA 1, 1984), Puerto Rico's usury statute was held inapplicable to the FDIC in its corporate capacity because the usury penalty "clearly frustrate[d] the congressional purpose in creating the Federal Deposit Insurance Corporation: to promote stability of, and confidence in, the nation's banking system." Similarly, in *Federal Deposit Ins Corp v Claycomb,* 945 F2d 853, 861 (CA 5, 1991), a Texas usury statute was held inapplicable to the FDIC as receiver because the usury penalty "could have no deterrent effect, and would only serve to punish innocent creditors of the failed institution by di-

minishing available assets." In *Anderson v Hershey,* 127 F2d 884, 887 (CA 6, 1942), the United States Court of Appeals for the Sixth Circuit held that a penalty imposed under a state usury statute should not be applied to bring about the anomalous result that the penalty is paid by the persons for whose benefit the receivership was imposed instead of the persons or institutions against whom the penalty is directed. See also *Federal Deposit Ins Corp v Aroneck,* 509 F Supp 553, 557 (D SC, 1979), aff'd in pertinent part and vacated in part, 643 F2d 164 (CA 4, 1981).

This rationale applies whether the FDIC is acting in a receivership capacity or in its corporate capacity. See *Claycomb, supra* (FDIC as receiver); *Campbell Leasing, Inc v Federal Deposit Ins Corp,* 901 F2d 1244, 1249 (CA 5, 1990); *Professional Asset Management, Inc v Penn Square Bank, NA,* 566 F Supp 134, 136 (WD Okla, 1983). It also applies to the FSLIC. See *Federal Deposit Ins Corp v Texas Country Living, Inc,* 756 F Supp 984, 987 (ED Tex, 1990); *Federal Savings & Loan Ins Corp v TF Stone-Liberty Land Associates,* 787 SW2d 475, 492 (Tex App, 1990). Federal law applies in an action involving the FDIC or the FSLIC. *Federal Deposit Ins Corp v Stone,* 578 F Supp 144, 146 (ED Mich, 1983).

There is no question that the forfeiture provision of Michigan's usury statute, MCL 438.32; MSA 19.15(2), is generally penal in nature. See *Allan v M & S Mortgage Co,* 138 Mich App 28, 41; 359 NW2d 238 (1984); *Michigan Mobile Homeowners Ass'n v Bank of Commonwealth,* 56 Mich App 206, 213; 223 NW2d 725 (1974). The FDIC is immune from bearing the brunt of this penalty. See *Garbutt, supra* at 473.

However, the issue here is whether the FDIC is permitted to collect back interest when the vast

majority of the interest due accrued before the FSLIC was appointed receiver. This appears to be an issue of first impression.

We do not believe that the forfeiture of pre-receivership interest constitutes a penalty against the FDIC; rather, it was punishment already visited on Regency.[3] Although the FDIC asserts that forfeiture of interest payments would no longer be of use as punishment for a bank in receivership, see *Claycomb, supra* at 861, defendant's nonpayment of interest before receivership did serve to penalize the bank while it was still operating independently and able to sustain the penalty without directly compromising the interests of its creditors, see *Aroneck, supra* at 557. Further, Regency's creditors were still in a position of negotiation with the bank. In dealing with Regency, these creditors would not have been justified in expecting the value of the land contract to include usurious interest that was forfeited and properly withheld under state law.[4]

However, "[t]he world changes when a bank goes into receivership." *Federal Deposit Ins Corp v Shain, Schaffer & Rafanello,* 944 F2d 129, 134 (CA 3, 1991). The interests and expectations of creditors change correspondingly. Continuing to impose usury penalties after the date of receivership would compromise directly the position of Regency's creditors. Further, when the FSLIC assumed

---

[3] We need not decide whether the FDIC as receiver would be required to return usurious interest payments made before receivership if defendant actually had made such payments. It probably would not.

[4] If the usuriousness of the interest rate were still an issue and if the FDIC established that the usury statute did not apply, then defendant would have had no right to withhold interest payments and the FDIC, as successor to Regency Bank's interest, could initiate an action to recover such unpaid interest or demand forfeiture. In this case, however, the FDIC failed to take issue with the applicability of the usury statute on its own terms. See *supra,* note 1.

control of Regency's assets, the value of the land contract was not the full purchase price; a substantial portion of that amount had been paid already. Rather, its value reflected the unpaid portion of the purchase price. The FDIC is exempt from usury penalties only with respect to assets available at the time of receivership. Therefore, the FDIC may demand payment of interest due under the land contract after the date of receivership. To hold otherwise would create a windfall in the value of Regency's assets.

Affirmed in part, reversed in part, and remanded to the district court for a calculation of the interest due under the land contract after the date of federal receivership. The district court shall enter an order awarding defendant ownership of the FDIC's interest in the underlying land contract if he pays the calculated amount of interest, plus any applicable judgment and prejudgment interest, within ninety days of the order. If defendant does not pay the back interest on time, the district court shall enforce the forfeiture provision of the land contract.