STATE-WILLIAM PARTNERSHIP v GALE

Docket No. 92212. Submitted June 2, 1987, at Lansing. Decided June 7, 1988.

State-William Partnership brought a foreclosure action on a land contract in the Washtenaw Circuit Court against Glen R. Gale and Corner of State and William Partnership. Defendants filed a counterclaim alleging misrepresentation and fraudulent concealment of material facts during negotiations for the sale of the commercial building involved. The trial court, William F. Ager, J., found defendants to be in default on the land contract and granted foreclosure. The court also awarded defendants damages on two of their claims but rejected several other claims. Defendants appealed.

The Court of Appeals *held:*

1. The existence of default under a land contract is a question of fact. While the existence of a bona fide dispute over the amount owed under the contract or for other damages may justify a court in using its equitable powers to relieve the purchaser from an unreasonable forfeiture, it does not prevent a finding of default. In this case, the trial court's finding of default under the terms of the contract was amply supported by the record. Unlike prior cases where the existence of good-faith disputes between the sellers and the purchasers about the amount due on installment or the contract price led to the purchasers' default and made it inequitable to grant acceleration of the contract, here defendants did not assert their fraud claims prior to their default and the claims did not lead to the default.

2. The trial court did not err in concluding that a tax lien placed on the building by the Michigan Employment Security Commission resulting in defendant Gale's inability to obtain a loan with which to make a payment on the land contract was

REFERENCES

Am Jur 2d, Contracts § 337.

Am Jur 2d, Vendor and Purchaser §§ 231, 296, 303, 404 *et seq.,* 554, 592.

See the Index to Annotations under Contracts and Sale and Transfer of Property.

not a ground for justifying defendants' late payments or for excusing the default.

3. The evidence presented did not support a finding of either fraudulent or innocent misrepresentation regarding plaintiff's statements about a prospective tenant's intention to lease space in the building during the parties' negotiations over the sale of the building. The trial court did not err in rejecting defendants' fraud claims regarding these statements.

4. The trial court did not err in finding that plaintiff was merely negligent in failing to inform defendants about a tenant's option to renew its lease and in awarding defendants attorney fees incurred in evicting the tenant. The trial court correctly determined that defendants were not entitled to damages for lost rent or for the difference between the value of the property with and without the option to renew, since defendants did not prove fraudulent or innocent misrepresentation regarding the tenant's option.

5. The trial court did not err in rejecting defendants' claim that plaintiff fraudulently concealed code violations. Defendant Gale inspected the premises, an inspector was retained by defendants, and defendants accepted the premises "as is."

6. Defendants did not raise in their pleadings and thus did not preserve for appeal the issue of fraud concerning plaintiff's failure to disclose the existence of an agreement between plaintiff and a tenant that reduced the tenant's liability for payments to utilities.

Affirmed.

1. VENDOR AND PURCHASER — LAND CONTRACTS — ACCELERATION CLAUSES.

Acceleration clauses in land contracts are valid and enforceable.

2. VENDOR AND PURCHASER — LAND CONTRACTS — FORECLOSURES — DEFAULT.

The existence of default under a land contract is a question of fact; while the existence of a bona fide dispute over the amount owed under the contract or for other damages may justify a court in using its equitable powers to relieve the purchaser from an unreasonable forfeiture, it does not prevent a finding of default.

3. FRAUD — ACTIONS.

An action for fraudulent misrepresentation requires proof that (1) the defendant made a material misrepresentation, (2) it was false, (3) when the defendant made it he knew that it was false, or made it recklessly, without any knowledge of its truth and

as a positive assertion, (4) the defendant made it with the intention that it should be acted upon by the plaintiff, (5) the plaintiff acted in reliance upon it, and (6) the plaintiff thereby suffered injury.

4. FRAUD — ACTIONS — INNOCENT MISREPRESENTATION.

An action for innocent misrepresentation requires proof of the same elements as those in an action for fraudulent misrepresentation except that the misrepresentation need not be made knowingly or recklessly; innocent misrepresentation also requires proof of the additional element that the plaintiff's injury actually benefited the defendant.

*Ellis, Talcott, Ohlgren & Ferguson, P.C.* (by *Karen T. Mendelson*), for plaintiff.

*Hyman, Gurwin, Nachman, Friedman & Winkelman* (by *Richard Bisio* and *Mark J. Bereyso*), for defendants.

Before: D. F. WALSH, P.J., and CYNAR and R. L. TAHVONEN,* JJ.

R. L. TAHVONEN, J. Plaintiff State-William Partnership brought this action to foreclose on a land contract. Defendant Glen R. Gale is the sole partner in defendant Corner of State and William Partnership. Defendants' counterclaim alleged misrepresentation and fraudulent concealment of material facts during negotiations for the sale of the building and sought damages on these claims. The trial court found that defendants were in default on the land contract and granted foreclosure. The court also awarded defendants damages on two of their claims. Defendants appeal as of right. We affirm.

Gale purchased the commercial building at the corner of State and William Streets in Ann Arbor on March 23, 1978. The land contract provides for

* Circuit judge, sitting on the Court of Appeals by assignment.

monthly payments on the principal and for monthly deposits into an escrow account for property taxes and insurance costs. Both payments are due on the first of the month. Under the terms of the contract, if the purchaser defaults, and the default continues for forty-five days, the seller may foreclose.

Gale was late with his payments in April and May of 1982, although the payments were less than forty-five days late. Ronald Weiser, general partner of State-William Partnership, and the chief executive of McKinley Associates, the managing company for State-William Partnership, testified that no legal action was economically feasible before the forty-five-day period, but that he never gave Gale permission to make late payments. Other McKinley Associates employees who serviced Gale's contract also testified that they did not tell Gale that McKinley Associates consented to the late payments.

Gale was late with the June 1, 1982, payment, and the forty-five-day period expired on July 19, 1982. No payment was received on July 19. Weiser was not contacted on July 19 by Gale or his wife concerning the June payment. On July 20, McKinley Associates telephoned Gale. Gale said that he was having cash-flow problems and expected to catch up in August. Gale did not tell McKinley Associates that the payment had been sent. After this telephone call, McKinley Associates sent a letter of notice of acceleration. Later that day, Mrs. Gale went to McKinley Associates and tendered the escrow payment, which McKinley Associates did not accept. Mrs. Gale swore an affidavit stating that she mailed a check for payment on the principal on July 19. This check was received by McKinley Associates on July 21.

Gale claimed that McKinley Associates had con-

sented on several occasions to late payments which were made after the last day of the month, and claimed that the payment on the principal was dated by his postage machine on July 19 and was mailed on that day. Gale also claimed that he had been unable to get a bank loan in time to make the payments because a Michigan Employment Security Commission tax lien against plaintiff State-William Partnership had been levied on his property.

The trial judge found that the land contract was in default, and that neither plaintiff nor its agents ever gave defendants permission to make late payments. The trial judge also concluded that defendants' claims for fraudulent concealment and misrepresentation did not justify denying plaintiff's action for foreclosure. We agree.

Acceleration clauses in land contracts are valid and enforceable. *Sindlinger v Paul,* 145 Mich App 28, 33; 377 NW2d 331 (1985). However, in some circumstances it may be inequitable for the trial court to grant acceleration, and the court may decline to do so. *Hygelund v Atlas,* 247 Mich 605; 226 NW 217 (1929); *Moore v Bunch,* 29 Mich App 498; 185 NW2d 565 (1971).

A trial court's findings of fact will not be set aside on appeal unless clearly erroneous. This Court gives due regard to the trial court's opportunity to judge the credibility of the witnesses. MCR 2.613(C). See also *Vergote v K mart Corp,* 158 Mich App 96; 404 NW2d 711 (1987). The trial court's findings that plaintiff did not give defendants permission to make late payments and that the tax escrow payment was not timely made were amply supported by the trial record. The trial judge properly concluded that defendants had defaulted under the terms of the land contract.

Defendants argue on appeal that the trial court

incorrectly ruled against defendants on their fraud claims, and that the amount of these claims, which exceeds the amount due for June 19, 1982, should be set off against that installment obligation to preclude a finding of default. Defendants also contend that the existence of defendants' fraud claims in an amount greater than the payment owed is sufficient to prevent foreclosure because that constitutes a dispute as to the amount owed under the land contract. Defendants rely on *Hygelund, supra,* in support of their argument.

Regardless of the merits of defendants' fraud claims, those damages may not be set off against the amount due to preclude a finding of default. Contrary to defendants' contention, *Hygelund* did not hold that the fact that purchasers had a claim against the sellers precluded a finding of default, but held that, under the circumstances of the case, it would be inequitable to enforce the acceleration provision of the contract. *Hygelund, supra,* p 607.

In *Hygelund,* the purchasers were found to be in default because they had not tendered payment in compliance with the contract terms. The Supreme Court found that, considering the purchasers' claim against the sellers for rent due, the trial judge had erred in applying the acceleration clause of the mortgage contract. The amount due under the contract was the amount of the unpaid installment, from which the purchasers could deduct the unpaid rent owed them by the sellers. *Hygelund, supra,* pp 606-607.

This Court followed the *Hygelund* decision in *Moore, supra.* In *Moore,* the purchasers stopped payment and informed the sellers that they were seeking a reduction of the purchase price on the ground of misrepresentation. The parties were unable to agree, and the purchasers subsequently made payments to an escrow account, pending

resolution of the dispute. No agreement having been reached, the sellers then brought suit to foreclose under the contract. *Moore, supra,* p 499.

Citing *Hygelund,* the *Moore* Court wrote:

> The acceleration clause of the contract was valid and binding, but should not have been applied, because there was an honest dispute over the amount which the defendant was required to pay. [*Moore, supra,* p 500.]

The Court in *Moore* concluded that a good-faith dispute over matters other than the amount due under the contract was sufficient to grant equitable relief from the operation of an acceleration clause. The Court did not hold that the finding of default was incorrect. *Moore, supra,* pp 500-501.

The existence of default under a contract is a question of fact. While the existence of a bona fide dispute over the amount owed under the contract or for other damages may justify a court in using its equitable powers to relieve the purchaser from an unreasonable forfeiture, it does not prevent a finding of default. *Hygelund, supra; Moore, supra.* The trial court's finding in this case that defendants were in default is affirmed.

Defendants argue that the existence of disputes about the amount due under the land contract, based on defendants' fraud claims, made it inequitable for the court to grant acceleration. The trial court concluded that defendants' claims for fraudulent concealment and misrepresentation did not justify denying plaintiff's action for foreclosure. We affirm this decision. The trial court's findings of fact on defendants' fraud claims were amply supported by the record, and its rulings on those claims are affirmed. MCR 2.613(C).

The facts of the *Hygelund* and *Moore* cases are

distinguishable from the facts in this case. In those cases, the existence of good-faith disputes between the sellers and the purchasers about the amount due on the installment or the contract price led to the purchasers' default and made it inequitable to grant acceleration of the contract. In the instant case, defendants did not assert these fraud claims prior to their default and these claims did not lead to the default. Purchasers under a land contract may not sit on their right to sue and contend four or five years after the sale that a misrepresentation at the time of sale excuses their default. See *Minchella v Fredericks,* 138 Mich App 462, 474; 360 NW2d 896 (1984).

Defendants also argue that the Michigan Employment Security Commission tax lien levied on the building prevented Gale from obtaining a bank loan in time to make the June payment and should excuse defendants' default. Even if the MESC lien did delay approval of Gale's loan, plaintiff partnership was not at fault. The MESC lien was improperly filed against one of the partners in plaintiff partnership and was removed when this mistake was discovered. The trial judge concluded that the improperly filed tax lien was not grounds for justifying defendants' late payments. The trial judge also found that Gale did not even consider this when failing to make his payments on time. There was no testimony that Gale ever told plaintiff that his payments were late because of his inability to obtain a loan because of the MESC lien. These findings were not clearly erroneous. MCR 2.613(C). Gale's financial problems are not grounds for excusing the default. Nor is plaintiff estopped from foreclosing because of an event for which it was not responsible. The trial court's decision on this issue is affirmed.

Defendants' first fraud claim alleged that plain-

tiff misrepresented the status of negotiations with a prospective tenant, the Bagel Place, when Gale was deciding whether to purchase the building. Gale testified that plaintiff told Gale that a Bagel Place tenancy was a "virtual sure thing," and that plaintiff included figures for a Bagel Place tenancy on the Annual Property Operating Data sheet given Gale before the purchase.

The trial court analyzed defendants' claim as alleging breach of promise, i.e., that plaintiff promised Gale that the Bagel Place would rent the premises. Since plaintiff could not bind a third party in contract, we agree with defendants' characterization of the claim as one alleging a misrepresentation about the state of negotiations with the Bagel Place at the time the land contract was signed.

Claims for fraudulent misrepresentation require proof that (1) the defendant made a material representation, (2) it was false, (3) the defendant knew it was false when made, or made it recklessly, without knowledge of its truth and as a positive assertion, (4) it was made with the intention to induce reliance by the plaintiff, (5) the plaintiff acted in reliance upon it, and (6) the plaintiff thereby suffered injury. *Temborius v Slatkin,* 157 Mich App 587, 597; 403 NW2d 821 (1986). A claim for "innocent" misrepresentation requires proof of the same elements except that the misrepresentation need not be made knowingly or recklessly. Innocent misrepresentation also requires proof of the additional element that the plaintiff's injury actually benefited the defendant. *Id.*

The trial court found that plaintiff did not promise defendants that the Bagel Place would rent the premises. This finding is well supported by the evidence and is affirmed. MCR 2.613(C). The evidence showed that plaintiff only expressed to Gale

its opinion that the Bagel Place would rent on the terms they had discussed. Plaintiff's statements about the probability of a Bagel Place lease were not misrepresentations of fact, but were opinions.

Defendants' fraud claim also fails because Gale could not reasonably rely on the alleged statements that the Bagel Place would rent the premises when the land contract expressly required plaintiff to deliver that space vacant. Gale expressly reserved to himself the authority to lease that space, and cannot later claim that he relied on plaintiff to lease it when making his decision to purchase the building.

Finally, defendants did not prove that plaintiff's statements about the Bagel Place's intentions to lease were false. Plaintiff indicated that the Bagel Place was disposed to lease the premises on the terms plaintiff and the Bagel Place discussed. Gale changed those terms, raising the rent, and the owner of the Bagel Place testified that the increased rent was the reason he ended the negotiations. Gale's conduct of further negotiations with the Bagel Place and the increased price are also further evidence that Gale did not rely on plaintiff's negotiations.

The evidence does not support a finding of either fraudulent or innocent misrepresentation. See *Temborius, supra.* The trial court did not err in rejecting defendants' claim for damages on this issue or in determining that this was not grounds for denying plaintiff's petition for foreclosure. The correct result of a trial court may be affirmed for different reasons. *DeWitt Twp v Clinton Co,* 113 Mich App 709, 713; 319 NW2d 2 (1982).

Defendants' second fraud claim is that plaintiff fraudulently concealed the existence of an option to renew the lease which had been granted to tenant Suwanee Springs. Plaintiff admitted that

Gale was not informed of the option to renew, but that the omission was not intentional. The trial court found that Gale did not consider the option significant and that Gale had not relied on the Suwanee Springs lease term in making his decision to purchase the building. This finding was amply supported by the trial record. MCR 2.613(C). The trial court also found that plaintiff should have disclosed the existence of the option to Gale, and that failure to do so was negligence. The trial court awarded defendants damages in the amount of $933.25 for attorney fees incurred in the eviction suit.

Defendants claim on appeal that the trial court erred in awarding damages only for attorney fees and not for lost rent. We find no error. Since defendants did not prove fraudulent or innocent misrepresentation, defendants are not entitled to damages for lost rent, or for the difference between the value of the property with and without the option to renew. *Temborius, supra; Gorman v Soble,* 120 Mich App 831; 318 NW2d 119 (1982). The trial court's conclusion that knowledge of the option would not have affected Gale's decision to purchase the property at that price is not clearly erroneous. MCR 2.613(C).

Defendants' third fraud claim is that plaintiff fraudulently concealed code violations. The trial court found that Gale inspected the premises himself and also retained an inspector. This finding, which is supported by the record, precludes any finding of fraud. *Temborius, supra,* p 597. The trial court ruled that, even if code violations existed at the time of sale, these violations did not justify denial of foreclosure because the contract provided that defendants accepted the premises "as is." A contract should be given its plain meaning. *Friske v Jasinski Builders, Inc,* 156 Mich App 468; 402

NW2d 42 (1986). We affirm the trial court's decision on this claim.

Finally, defendants claim on appeal that the trial court erred in failing to address defendants' fraud claim concerning the proration of utilities with Suwanee Springs. Defendants claim that plaintiff fraudulently concealed the existence of an agreement with Suwanee Springs that reduced their proper share of the utilities. Our review of the record shows that this issue was not raised in the pleadings, and is not preserved for appeal. *Community Nat'l Bank of Pontiac v Mich Basic Property Ins Ass'n,* 159 Mich App 510; 407 NW2d 31 (1987); *Belobradich v Sarnsethsiri,* 131 Mich App 241, 246; 346 NW2d 83 (1983).

Our resolution of these issues renders plaintiff's motion to dismiss the appeal moot, and that motion is denied.

Affirmed. Costs to appellee.